Rudesinda Monagas de Bravo, demandante y apelada, *v.* R. Sancho Bonet, Tesorero de Puerto Rico, demandado y apelante.

Núm. 8227.—*Sometido:* Noviembre 6, 1940. *Resuelto:* Diciembre 6, 1940.

*Hon. Procurador General George A. Malcolm* y *M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del apelante; *J. J. Ortiz Alibrán,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Doña Estela Bianchi viuda de Monagas falleció en Ma-

yagüez el 14 de diciembre de 1934, dejando a la demandante como su única y universal heredera. A los efectos del pago de la contribución de herencia, la demandante radicó en el Departamento de Hacienda una notificación contentiva del inventario de los bienes de la herencia, entre los cuales se hallan 175 acciones de la corporación Mayagüez Sugar Co. Valoró la demandante dichas acciones en $70,000, o sea a razón de $400 cada una, a pesar de que su valor a la par era de $1,000 por cada acción. Aceptó el Tesorero la valoración de los demás bienes componentes de la herencia, con excepción del valor dado a las acciones, que él estimó a razón de $1,480 cada una, subiendo así esta partida de $70,000 a $259,000. No estuvo conforme la demandante y recurrió a la Junta de Revisión e Igualamiento, la que luego de la correspondiente audiencia, redujo la valoración del Tesorero en lo que a las acciones respecta, de $259,000 a $175,000, estimando el valor de cada acción en $1,000. No satisfecha la demandante, pagó la contribución bajo protesta e instituyó este pleito en la corte inferior, solicitando la devolución de la totalidad de la contribución por ella pagada, a saber: $12,882.96 y sus recargos montantes a $1,803.61, en total $14,686.57, que alega le fué ilegalmente cobrada, más intereses legales sobre dicha suma desde la interposición de la demanda, y las costas, gastos y honorarios de abogado, por ser inconstitucional, según ella, la Ley núm. 99, de 29 de agosto de 1925, intitulada "Ley para modificar y ampliar la contribución sobre trasmisión de bienes por herencia, y para otros fines," (Leyes de 1925, pág. 791), suplicando además, la demandante que en caso de sostenerse la constitucionalidad de la ley, fuese condenado el demandado a devolverle $7,182, que es la diferencia entre el montante de la contribución valorando las acciones en la forma en que lo hizo la Junta de Revisión e Igualamiento y el que les dió la demandante a razón de $400 cada una.

Desestimada que fué la excepción previa de insuficiencia de hechos para constituir una causa de acción, contestó el

demandado. Trabada así la contienda, el 14 de julio de 1939 por los méritos de la prueba se dictó la sentencia apelada, en la que se sostuvo la constitucionalidad de la ley impugnada, y estimando la corte el valor total de las acciones en $75,463.50, o sea a razón de $431.22 cada una, ordenó que por el Tesorero de Puerto Rico se practicara una reliquidación a base del valor dado por la corte a las acciones, hecho lo cual habría de restituirse a la demandante la cantidad cobrada en exceso de la que correspondiera pagar, con intereses desde el primero de julio de 1936, fecha de la interposición de la demanda, sin costas.

Interpuso el demandado el presente recurso, solicitando la demandante se desestimase por frívolo, más como para la fecha de la vista de dicha moción en este tribunal, el 6 del mes pasado, una y otra parte habrían radicado ya sus alegatos escritos en relación con el recurso en sus méritos, estipularon, con la aprobación del tribunal, que en caso de no proceder la desestimación por frivolidad, se resolviese el pleito en sus méritos sin necesidad de una nueva vista.

■ Un recurso de apelación es frívolo cuando su insuficiencia es tan manifiesta que no requiere esfuerzo mental alguno para descubrirla. Un recurso como el presente, en que la representación de la apelada ha estimado necesario radicar un alegato de 28 páginas para controvertir los argumentos del apelante, en manera alguna puede considerarse frívolo.

■ En el señalamiento de errores se indica en primer término el haberse desestimado la excepción previa interpuesta por el demandado. Aunque ese error no fué discutido en el alegato del apelante, no obstante tratándose de una excepción previa de falta de causa de acción, hemos examinado la demanda y a nuestro juicio la misma es suficiente. Descartada la excepción previa así como la cuestión constitucional levantada por la apelada—puesto que no interpuso ella recurso alguno contra la sentencia que la desestimó—, la única cuestión a resolver en esta apelación es la de si, a los

efectos del pago de la contribución de herencia, acciones de una corporación de familia (*close corporation*), que no tienen valor conocido en el mercado, deben tasarse de acuerdo con el valor que resulte de los libros de la corporación (*book value*), como sostiene el demandado apelante, o si, como afirma en contrario la demandante apelada, puede y debe recurrirse al valor de los bienes corporativos para determinar el de las acciones, cuando como en el presente caso se alega que el valor en los libros (*book value*) está inflado y no representa el verdadero y justo valor de dichas acciones.

No existe en Puerto Rico ninguna ley que establezca el criterio a seguir en casos como el presente y es nueva la cuestión en este tribunal.

Refiriéndose a esta cuestión, ha dicho el *Board of Tax Appeals* que no hay ningún método preferido (*controlling method*) para determinar el valor de las acciones de una corporación de familia (*close corporation*), sino que más bien el problema debe ser resuelto por el ejercicio de una sana discreción, aplicando el método que sea más justo y apropiado de acuerdo con las circunstancias de cada caso en particular. *Huntington* v. *Commissioner of Internal Revenue* (1937) 36 B.T.A. (F.) 698. La jurisprudencia, sin embargo, parece dar preferencia en primer término al valor de las acciones en el mercado, y en caso de que su valor no fuese conocido en el mercado y el *book value* o valor en los libros no reflejase enteramente la verdad, entonces puede determinarse el valor de las acciones tasando la propiedad de la corporación por ellas representada, más el *good will* si lo hubiere, y dividido el valor total de la propiedad luego de deducido su pasivo y las acciones preferidas si las hubiere, por el número de acciones comunes, el cociente será el valor neto de cada acción común. Véanse las monografías en 24 A.L.R. 1041, 57 A.L.R. 1155, 83 A.L.R. 940, y 117 A.L.R. 149. Véanse también *In re Lemke's Will* y *State* v. *Lemke* (1931, Wis.) 238 N. W. 806. En el presente caso la prueba demostró que las acciones no tenían valor conocido en el mercado,

pues nunca se había hecho venta alguna de ellas, y aunque según la prueba de la demandante las 175 acciones en cuestión fueron ofrecidas a tres distintas personas interesadas en la compra de valores y una de ellas ofreció $400 por acción— oferta que no fué aceptada puesto que no era el propósito de la demandante vender sus acciones y sí determinar el valor de las mismas en el mercado—no podemos aceptar esa simple operación como base para determinar el valor de las acciones. Resultó también de la prueba que el valor en los libros (*book value*) de las acciones estaba considerablemente inflado. Refiriéndose al valor en los libros, dice la corte sentenciadora en su opinión:

"No hay duda que la evidencia practicada por la demandante ha sido preponderante a favor de la prueba de sus alegaciones de que el *book value* ha sido erróneamente apreciado, y que en este caso procedía una revaloración para el ajuste correspondiente. La prueba manifiesta de una manera clara que se trata de una factoría de 30 años de uso, con maquinaria vieja y en desuso en otras centrales. La declaración de don Oscar F. Bravo presenta la historia de la central; explicó que las perspectivas de la industria del azúcar para el año 1935 con motivo de la promulgación de la Ley Costigan Jones, no era buena; quedó esto también demostrado con la propia evidencia del demandado, de la que aparece que la verdadera situación del año 1935 era una pérdida en el balance de unos $70,000. El ingeniero, Sr. Castro, declaró tan elaboradamente sobre el valor de los bienes que esa sola declaración sería suficiente para esta corte resolver que el valor de la factoría consignado en los libros era exagerado. La corte no puede ignorar esas declaraciones, que prueban las alegaciones de la demanda. Si el demandado nos hubiera ofrecido la declaración de peritos que hubieran controvertido las declaraciones presentadas por la parte demandante, la corte estaría en posición de juzgar cuál de las valoraciones resultaba correcta. El demandado descansa muy a menudo, como se expresa en su alegato en este caso, en que es elemental el principio de que los funcionarios públicos cumplen fielmente con los deberes de sus cargos, siendo correctas sus actuaciones, y en ese caso, el demandado hace descansar el peso de la prueba al que impugna dicha corrección. Pero ya se ha resuelto en repetidas ocasiones, y ahora muy recientemente en *South P. R. Sugar Co.* v. *Tesorero*, 54 D.P.R. 70, que la presunción

existente en favor de la certeza de una tasación administrativa no es irrefutable. En el presente caso, a nuestro juicio, se ha refutado cumplidamente esa presunción.'' (T. de A., págs. 38, 39.)

. En el artículo de Benjamin M. Robinson titulado *"Dissenting Shareholders: Their Right to Dividends and the Valuation of Their Shares"*, publicado en (1932) 32 *Columbia Law Review,* pág. 60, tratando del escaso valor probatorio del valor en los libros (*book value*) de las acciones, se dice lo siguiente:

· ''Kentucky y Nuevo Méjico prescriben el valor de las acciones en los libros (*book value*)' como el valor mínimo. Esto es erróneo. Conforme se dijo por el Juez Hand, 'La sugestión de que el valor en los libros de las acciones representa en alguna forma su valor actual, ·es claramente falaz...' El valor en los libros de las acciones de corporaciones, se admite que no tiene relación alguna con su valor propiamente dicho. Frecuentemente está inflado o depreciado (*deflated*) para servir propósitos particulares, irrespectivamente de su capacidad productiva, precio en el mercado, valor de desecho (*scrap value*) etc. Si el valor en los libros se expresa como el costo menos depreciación, su resultado podría no ser exacto debido a que su utilidad económica ha ·pasado. Los valores de reproducción no son más exactos por idénticas razones.'' (Págs. ·74-75.)

Recurriremos, pues, al método que dentro de las circunstancias resulta el más aceptable, o sea, el de tasar la propiedad física representada por las acciones.

De la prueba de la demandante apelada resulta que la corporación de que se trata se dedica a la fabricación de azúcar de caña y que los únicos terrenos que posee es una parcela de 18 cuerdas en la que enclavan la factoría y otras edificaciones accesorias. Que esta Central se estableció en el año 1908, con una maquinaria que hacía dos años había sido traída de Inglaterra y no había podido ser levantada del muelle por no estar en condiciones el importador de pagar los correspondientes derechos de aduana. Que en la fecha en que falleció la causante, el 14 de diciembre de 1934, el 85 por ciento de la maquinaria era la misma con que originalmente se estableció la Central en 1908, es decir, que

venía usándose por espacio de 27 años, sin que en dicha maquinaria se introdujeran las reformas modernas de que actualmente están dotadas las demás Centrales y con las cuales aumenta considerablemente su rendimiento.

Declaró por la demandante el perito Pedro B. Castro, ingeniero mecánico graduado en 1911, que lo fué de esta Central en 1923 ó 1924, y con experiencia como tal en las siguientes centrales: Eureka, Boca Chica, Mayagüez Sugar Co., Juanita y Fajardo, en Puerto Rico, y Pilar y Estrella, en la República de Cuba. Manifestó este testigo que en 1935 fué requerido por don Oscar Bravo, presidente de la Mayagüez Sugar Co., para que hiciese una tasación de todas las propiedades de la Central y que como trabajaba entonces en San Juan, tuvo que ir en diez o doce fines de semana a Mayagüez para tomar todos los datos necesarios sobre el terreno, regresando luego a su residencia para hacer los cálculos correspondientes. Refiriéndose a la forma en que hizo la tasación, dijo el testigo que había examinado cada una de las máquinas, bombas, artefactos, etc., tomando la medida exacta de cada uno de ellos, cerciorándose de sus cimientos, calculando los fletes, costo de instalación, considerando el año en que se montó la máquina o fué ésta comprada, para así calcular los años de vida de cada una de ellas y poder calcular su depreciación, "obsolencia", etc., y después de un estudio minucioso de cada una de las dependencias de la Central, que dividió en sus distintos departamentos, llegó a la conclusión que el valor de la Central de dicha corporación, incluyendo la fábrica, maquinarias, terrenos, ganado, casa, etc., importa la cantidad de $189,436.78. Si a dicha suma agregamos el resto del activo de la corporación, montante a $247,025, tendremos entonces que el activo bruto —no incluyendo el *good will,* puesto que no se probó que existiera y así lo declaró la corte sentenciadora—asciende a la cantidad de $436,461.78. Deduciendo del activo el pasivo, que ambas partes aceptan en $328,657.42, tendremos entonces que el activo neto de la corporación asciende a $107,804.36,

suma que dividida entre las ·250 acciones emitidas, nos dará un cociente de $431.22, que es el valor de cada acción. Puesto que son 175 las heredadas por la demandante, el valor total de las mismas será $75,463.50, que fué en lo que las estimó la corte inferior.

Como la prueba de la demandante controvirtió satisfactoriamente, a nuestro juicio, la del demandado, que consistió exclusivamente en el valor en los libros (*book value*) de las acciones, y como no encontramos que la corte inferior cometiera error manifiesto en la apreciación de la prueba, *procede desestimar el recurso y confirmar la sentencia apelada.*